UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEACHFRONT NORTH CONDOMINIUM ASSOCIATION, INC., | Civil Action No.: 1:14-cv-06706 (RBK)(JS) |
| Plaintiff, | |
| v. | |
| LEXINGTON INSURANCE COMPANY, | |
| Defendant. | |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR A
PROTECTIVE ORDER**

**GENOVA BURNS LLC**
494 BROAD STREET
Newark, New Jersey 07102
TEL: (973) 533-0777
Attorneys for Plaintiff
Beachfront North Condominium
Association, Inc.

*Of Counsel*
Jennifer Mazawey, Esq.
Lauren W. Gershuny, Esq.
Conlee S. Whiteley, Esq.
Deborah R. Trotter, Esq.

*On the Brief*
Lauren W. Gershuny, Esq.
Deborah R. Trotter, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................iii

PRELIMINARY STATEMENT ...........................................1

REPLY STATEMENT OF RELEVANT FACTS ..............................1

LEGAL ARGUMENT .................................................2

I.   PLAINTIFF'S  PROTECTIVE  ORDER  IS  SUBMITTED  TO
     RESOLVE A BROAD DISCOVERY DISPUTE RATHER THAN TO
     ASSERT PRIVILEGE OVER INDIVIDUAL DOCUMENTS................2

II.  LEXINGTON'S OPPOSITION TO PLAINTIFF'S ASSERTION OF
     BOTH  THE  ATTORNEY-CLIENT  PRIVILEGE  AND  ATTORNEY
     WORK-PRODUCT DOCTRINE IS PREDICATED UPON A FALSE
     PREMISE REGARDING THE TIMING OF PLAITNIFF'S CLAIM.........3

III. LEXINGTON  SEEKS  COMMUNICATIONS  PLAINLY  PROTECTED
     BY THE ATTORNEY-CLIENT PRIVILEGE.........................5

IV.  LEXINGTON SEEKS DOCUMENTS THAT ARE PROTECTED BY
     THE WORK-PRODUCT DOCTRINE................................8

V.   PLAINTIFF HAS NOT WAIVED PROTECTION OF THE WORK
     PRODUCT DOCTRINE........................................11

CONCLUSION ....................................................15

## TABLE OF AUTHORITIES

CASES

Bramlette v. Hyundai Motor Co.,
   No. 91 C 3635, 1993 Wl 338980 (N.D. III. Sept. 1, 1993) ......15

Coastline Terminals of Conn., Inc. v. U.S. Steel Corp.,
   221 F.R.D. 14 (D. Conn. 2003) ................................14

Copper Market Anti-Trust Litigation,
   200 F.R.D. 213 (S.D.N.Y. 2001) ...............................8

Hager v. Bluefield Reg'l Med. Ctr.,
   170 F.R.D. 70 (D.D.C. 1997) .................................16

In Re Air Crash Disaster,
   133 F.R.D. 515 (N.D. III. 1990) .............................15

In re Commercial Financial Services, Inc.,
   247 B.R. 828 (Bankr. N.D. Okla 2000) ........................16

In re Gonnella,
   238 N.J.Super. 509, A.2d 53 (Law Div.1989) ...................6

In re Grand Jury Subpoenas Dated March 24, 2003,
   265 F.Supp.2d 361 (S.D.N.Y. 2003) ............................8

In re Sealed Case,
   676 F.2d 793 (D.C. Cir. 1982) ...............................13

Martin v. Bally's Park Place Hotel & Casino,
   983 F.2d 1252 (3d. Cir. 1993) ................................9

Mattenson v. Baxter Healthcare Corp.,
   438 F.3d 763 (7th Cir. 2006) ..............................11

Mine Safety Appliances Co. v. AIU Ins. Co.,
   No. N10C-07-241 (Del. Super. Ct. 2014) .......................7

Minn. Speciality Crops, Inc. v. Minn. Wild Hockey Club. L.P.,
   210 F.R.D. 673 (D. Minn. 2002) ..............................16

Mission Nat'l Ins. Co. v. Lilly,
   112 F.R.D. 160 (D. Minn. 1986) ...............................6

Occidental Chem. Corp. v. OHM Remediation Servs. Corp.,
    175 F.R.D. 431 (W.D.N.Y. 1997) ............................... 14

United States v. Davis,
    636 F.2d 1028 (5th Cir. 1981) ............................... 11

United States v. Kovel,
    296 F.2d 918 (2d. Cir. 1961) ................................ 7

## PRELIMINARY STATEMENT

For the below reasons, Plaintiff's[1] Motion for a Protective Order should be granted. Lexington's opposition is insufficient as a matter of law and Plaintiff has carried its burden.

## REPLY STATEMENT OF RELEVANT FACTS

Plaintiff incorporates herein the facts relied upon in its initial moving papers. Plaintiff further relies on the Certification of Thomas V. Giaimo, Esq. ("Giaimo Cert.") and the Reply Certification of Lauren W. Gershuny ("Gershuny Reply Cert.") In addition to the facts contained in the initial moving papers, several relevant documents were produced by Lexington in this matter which illuminate the issues contained in the within motion. First, documents contained within Lexington's production make clear that Plaintiff's claim was not submitted by Counsel, but rather before counsel was ever involved in this matter- namely, on November 1, 2012. (See Gershuny Reply Cert., Exh. A; see also Declaration of Keith Cully, Exh. A.) Further, the production shows that on April 8, 2013, Lexington sent Plaintiff correspondence suggesting a mediation process to aid in the resolution of disputes between the parties. (See Gershuny Reply Cert., Exh. B.) The production shows that on August 20, 2013, Gary Parkes of York Risk Services Group

---

[1] Capitalized terms not defined herein are as set forth in the initial moving papers and/or the Complaint.

("York"), Lexington's third party claims administrator, requested guidance from the carrier as to whether Lexington intended to retain counsel in this matter. (See id., Exh. C.) These documents illustrate the fact that, despite its position to the contrary, Lexington was, at all times, aware Genova Burns was retained by Plaintiff to serve as its legal counsel- not in some other non-legal role, and that the prospect of litigation existed way before the Complaint was filed in this case.

## LEGAL ARGUMENT

### I. PLAINTIFF'S PROTECTIVE ORDER IS SUBMITTED TO RESOLVE A BROAD DISCOVERY DISPUTE RATHER THAN TO ASSERT PRIVILEGE OVER INDIVIDUAL DOCUMENTS.

As a preliminary matter, Lexington attacks Plaintiff's motion on the basis that it has failed to specifically set forth each document it wishes to protect through the attorney-client privilege and the attorney work-product doctrine, like a litigant would do in a privilege log. However, Plaintiff's motion was filed pursuant to the Court's April 8, 2015 Order so that Plaintiff may clarify, in broad-brush fashion, Plaintiff's assertion of privilege and/or protection of various documents, and the impropriety of the subpoenas improperly served by Lexington on Weidlinger and TEI. Upon receiving guidance from the Court regarding the scope of privilege in this matter, Plaintiff will provide any necessary privilege logs.

II.   LEXINGTON'S  OPPOSITION  TO  PLAINTIFF'S  ASSERTION  OF
      BOTH THE ATTORNEY-CLIENT PRIVILEGE AND ATTORNEY WORK-
      PRODUCT DOCTRINE IS PREDICATED UPON A FALSE PREMISE
      REGARDING      THE      TIMING      OF      PLAITNIFF'S
      CLAIM.

     In its Opposition to this Motion, Lexington advances the
idea that Plaintiff's counsel acted as what it calls "claims
handlers".   Lexington's   argument   is   predicated   upon   its
proposition that Plaintiff's claim was submitted in August 2013
by Plaintiff's counsel.  However, this premise is simply untrue.
Lexington glosses over the truth regarding Plaintiff's claim
because it is fatal to Lexington's entire argument in opposition
to  Plaintiff's  assertion  of  attorney-client  privilege  and
attorney work-product doctrine.

     Further, Lexington's premise is contradicted by its own
documents, which have been produced in this matter.   For
example, Lexington's claim file reveals that Plaintiff presented
its Sandy claim on November 1, 2012. See Gershuny Reply Cert.,
Exh. A. The Claim received a claim number of LXCC-1591A9, which
has been retained throughout. Any insinuation that the initial
Claim was presented by Plaintiff's counsel is simply untrue.

     Lexington's  confused  timeline  obfuscates  the  fact  that
Lexington   failed   to   properly   adjust   Plaintiff's   Claim.
Confronted with a bad faith adjustment of its claim in January
2013, Plaintiff retained legal counsel.  Counsel retained expert
consultants to assist it in determining the scope of Plaintiff's

3

rights and remedies under the Policy and render the appropriate legal advice, as well as to testify in the litigation that could reasonably be anticipated by Lexington's refusal to adjust the Claim.

Indeed, at the time Plaintiff retained counsel, the dispute was crystal clear. For example, on April 8, 2013, Lexington advised Plaintiff of certain dispute resolution mechanisms (including mediation) regarding Plaintiff's claim. See Gershuny Reply Cert., Exh. B. Further, in at least August 20, 2013, there is evidence that Lexington recognized the dispute as requiring legal counsel. In correspondence to Andrew Calandriello of AIG, Parkes (of York) requests guidance as to whether Lexington will "consider the appointment of legal counsel." See Gershuny Reply Cert., Exh. C. The correspondence makes clear that Lexington, and its agent York, were aware that a dispute had arisen and that Kanner & Whiteley and Genova Burns had been retained as legal counsel not as some kind of "claims handlers".

Confronted with simple facts it cannot avoid, Lexington clutters its opposition with examples of Plaintiff's counsel using certain words or phrases. Such examples are simply inconsequential and speak to Lexington's weak legal position. For example, Lexington makes much of an internet posting by Kanner & Whiteley which is simply irrelevant. Indeed, Lexington's presentation of this generic copy as some type of

4

"smoking gun" is preposterous. In another example, Lexington highlights a representation letter submitted by Genova Burns which incorrectly states a claim will be forthcoming by Plaintiff. In fact, and as demonstrated, Plaintiff had already submitted a claim under the Policy. Lexington apparently seeks to oppose this motion not on the merits, but by parsing semantics. Lexington's games are insufficient to strip Plaintiff of its privileges.

In deciding this Motion, the Court must focus not on Lexington's rhetoric but on the facts, namely, that Plaintiff's claim was not adjusted and Plaintiff was forced to seek counsel to address a dispute with the carrier and advise it as to its legal rights.

## III.  LEXINGTON SEEKS COMMUNICATIONS PLAINLY PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

Viewed in the proper context, it is clear that communications between Plaintiff and Plaintiff's counsel should be protected by the attorney-client privilege. The attorney-client privilege is codified at N.J.S.A. 2A:84A-20 which states that "communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged...." The privilege itself is not restricted to legal advice, though "[it] is limited to those situations in which lawful legal advice is the object of the relationship." In re

5

Gonnella, 238 N.J.Super. 509, 512, 570 A.2d 53 (Law Div.1989). Plaintiff's counsel communicated with Plaintiff and with its expert consultants for the express purpose of rendering legal advice.   To the extent that some of the communications are not strictly limited to legal advice, they are still protected in that legal advice regarding Plaintiff's insurance claim is the sole object of the relationship.

Lexington cites to a myriad of cases in a feeble attempt to argue that Plaintiff's counsel was acting as something other than counsel in this matter. None of these cases, however, apply to the case at bar. In, Mission Nat'l Ins. Co. v. Lilly, 112 F.R.D. 160 (D. Minn. 1986), for example, an insurer employed attorneys to "fulfill its ordinary business function of claims investigation." Id. at 163.   The Court held that discovery into the insurer's counsel's investigation turned on it being the ordinary business of the insurer. Id.   The clear difference between Mission Nat'l and this case is manifested in that the insurer in Mission Nat'l investigates losses in its normal course of business, but Plaintiff is a condominium association whose retention of counsel was not done in the ordinary course of business and was rather necessitated by Plaintiff's need for legal advice regarding Lexington's failure to properly adjust its claim.   Thus, Lexington's analogy between this case and Mission Nat'l fails.

6

Lexington oddly states that Mine Safety Appliances Co. v. AIU Ins. Co., No. N10C-07-241 (Del. Super. Ct. 2014) is "virtually indistinguishable" from this case. (See Opp. Br. at 25.) In fact, the Delaware Superior Court's decision is completely different from the case at bar. In Mine Safety Appliances, a company transferred routine risk management operations done by non-lawyer personnel in the ordinary course of business to an outside law firm. See Declaration of Daniel J. Endick, Esq., Exhibit L at p. 3. The work taken over by counsel was not specific to a particular dispute. Id. Mine Safety Appliances is not even remotely similar to the instant matter in which counsel was retained specifically to aid Plaintiff in its dispute with Lexington regarding its Superstorm Sandy insurance claim.

Similarly, communications with Weidlinger and TEI are privileged. Lexington bases its opposition to this privilege upon a literal reading of United States v. Kovel, 296 F.2d 918 (2d. Cir. 1961). Courts, however, have recognized the limitations in such a narrow reading and focus more upon the role the third-party plays in the communications. See Copper Market Anti-Trust Litigation, 200 F.R.D. 213, 219-220 (S.D.N.Y. 2001). (stating in reference to Kovel that "the Court finds unpersuasive [the] argument that third-party consultants come within the scope of the privilege only when acting as conduits

or facilitators of attorney-client communications."). In In re Grand Jury Subpoenas Dated March 24, 2003, 265 F.Supp.2d 361 (S.D.N.Y. 2003), the Court applied the attorney-client privilege to a public relations firm hired by counsel, which assisted the attorney in creating a media spin to lessen the chance of an indictment for the client. Again the Court relaxed the strict interpretation of Kovel and concluded that the public relation firm's communications with counsel were needed to facilitate legal advice.

Similarly, in this case and notwithstanding Lexington's argument to the contrary, specific attention should be paid to the roles Weidlinger and TEI played in this matter. Specifically, they were retained to provide technical expertise so that counsel could evaluate a dispute with the carrier and properly advise Plaintiff as to its legal rights and remedies. As such, their communications with counsel were necessary to facilitate legal advice and should be protected by the attorney-client privilege.

## IV.   LEXINGTON SEEKS DOCUMENTS THAT ARE PROTECTED BY THE WORK-PRODUCT DOCTRINE.

Lexington's opposition to Plaintiff's assertion of the work-product doctrine is also flawed. The record set forth by Plaintiff is sufficient to establish that litigation was anticipated at the time Plaintiff retained counsel, thus

8

protecting documents prepared for same.   As stated by the Third Circuit, "[p]rudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252 (3d. Cir. 1993).

Plaintiff, through certifications, has established that Plaintiff submitted its Claim and that the Claim was not properly or timely adjusted by Lexington. The facts established in this matter show that Plaintiff retained experienced counsel who, based upon prior, similar circumstances, knew litigation would likely be necessary to resolve the dispute regarding Plaintiff's claim.   Lexington's opposition to Plaintiff's motion argues that Plaintiff has not met its burden in showing that litigation was likely anticipated by presenting certifications of outside counsel. Defendant makes much of the fact that Plaintiff's President's certification does not address when litigation was anticipated. However, Lexington is not sensitive to the fact that Plaintiff needs to demonstrate when it first anticipated litigation, all while not revealing privileged communications it had with counsel.   Lexington's attempt to seek a disclosure of Plaintiff's privileged communications with

counsel regarding counsel's legal advice and litigation strategy
is unnecessary and improper.

Indeed, Lexington has mischaracterized the applicable
standard. In order to qualify for protection from disclosure
under the attorney work-product doctrine, documents do not have
to be created "solely" or primarily for the purpose of
litigation. In determining what constitutes anticipation of
litigation, the Second, Third, Fourth, Eighth, Ninth and D.C.
Circuits evaluate whether a document was prepared because of the
prospect of litigation. This standard, for example, differs
substantially from the "primary motivation" test used in the
Fifth Circuit. See United States v. Davis, 636 F.2d 1028 (5th
Cir. 1981).

An illustration of the difference in standards is seen in
the Seventh Circuit's decision in Mattenson v. Baxter Healthcare
Corp., 438 F.3d 763 (7th Cir. 2006). In Mattenson, the Seventh
Circuit, applying the same standard as the Third Circuit held
that notes from a meeting about a possible case, that in fact
materialized, were protected by the work-product doctrine
provided that the prospect of litigation was not remote, despite
the fact that the case had not begun and might never be brought.
Mattenson at 768. Further, the Court was not persuaded by the
fact that certain parties expressly "testified that the meeting
was not in anticipation of litigation." Id.

In this case, the prospect of litigation between Plaintiff and Lexington was not remote, despite the fact that litigation ended up not being initiated until October 2014.    Instead, reasonable parties could have, and did, anticipate litigation at the time Plaintiff's counsel was retained in January 2013.

Thus, the work product of Plaintiff's counsel, and Weidlinger, and TEI is protected from disclosure under the attorney work- product doctrine. Nothing set forth by Lexington dictates otherwise.

## V.   PLAINTIFF HAS NOT WAIVED PROTECTION OF THE WORK PRODUCT DOCTRINE.

Unsurprisingly, Lexington's arguments as to waiver consist of conflation of various standards and the parsing of language contained in Plaintiff's initial disclosures.

Similar to its citation to press releases and a letter from counsel, Lexington attempts to use Plaintiff's F.R.C.P. 26 disclosures, in which it listed certain individuals as having knowledge, against it.  Specifically, Lexington argues that the fact that Plaintiff's disclosures list Weidlinger and TEI as entities with knowledge of the facts is some sort of admission that these entities are fact witnesses and not experts retained in anticipation of litigation.    Lexington's proposition is simply untrue.    In fact, Plaintiff's Initial Disclosures make very clear that these individuals and entities were retained in

11

anticipation of litigation. When listing Weidlinger and TEI, Plaintiff's Initial Disclosures state that each is a "consultant retained in anticipation of litigation." (See Mazawey Cert., Exh. A.)

Additionally, Lexington conflates waiver of the attorney-client privilege with waiver of the work-product doctrine. Because the attorney-client privilege concerns confidentiality itself, the critical tenet of waiver is the disclosure itself. Lexington tries to ascribe this standard to the work-product doctrine. However, the work-product doctrine has a different waiver standard and is not waived easily. The work-product doctrine is only waived when disclosure runs counter to the principles established by the adversary system. See In re Sealed Case, 676 F.2d 793 (D.C. Cir. 1982). Waiver of the work product doctrine, therefore, is dependent upon the specific factual circumstances of the case and the doctrine is consistent with selective disclosure, even in some circumstances to an adversary. See Id.

Here, nothing in Plaintiff's disclosure of the Weidlinger and TEI reports, done for settlement purposes, is inconsistent with the adversary system. Indeed, to rule that a settlement negotiation disclosure constitutes a waiver of the work-product doctrine would have a chilling effect on pre-litigation settlement discussions in this District.

12

Lexington further argues that Plaintiff waived the protection of the doctrine by placing the work product of Weidlinger and TEI "at issue" in this case. This application of the "at issue" principle, however, is misguided. The "at issue" waiver principle applies where the otherwise protected work-product would be indispensable to the specific case, such as legal malpractice suits where an attorney's work product not only would be an issue but would constitute the case itself. See generally Restatement (Third) of the Law Governing Lawyers §92(1)(2000).

The difference is demonstrated by certain authority cited by Lexington. For example, Lexington cites to Coastline Terminals of Conn., Inc. v. U.S. Steel Corp., 221 F.R.D. 14 (D. Conn. 2003) and Occidental Chem. Corp. v. OHM Remediation Servs. Corp., 175 F.R.D. 431 (W.D.N.Y. 1997). In both Coastline Terminals and Occidental, one party asserted the attorney work product doctrine over its consultants' work product. The courts in those cases held that since the work product itself was at issue in the litigation, the work product doctrine did not apply. Here, Plaintiff is putting at issue Defendant's adjustment of Plaintiff's insurance claim, not Weidlinger's and TEI's reports. Weidlinger's and TEI's reports are simply draft expert reports which explain why Defendant's investigation was

13

wholly inadequate.    Therefore,  any  comparison  between  this  case
and Coastline/Occidental is inapt.

Lexington,  here  as  throughout  its  Opposition,  seeks  to
distance itself from an incontrovertible truth - this dispute is
of Lexington's own making due to its post-Sandy claims handling
of  Plaintiff's  claim.    Lexington,  through  its  agents,  chose  to
conduct  a  cursory  investigation  and  declined  to  employ  the
proper  experts.    That  Lexington  first  learned  of  certain
conditions through Plaintiff's counsel's attempt to settle the
claim,   rather   than   its   own   investigation   does   not   make
Plaintiff's expert reports the "facts" of the case.

Even if Plaintiff has waived the work-product protection,
which  it  has  not,  it  has  only  done  so  with  regard  to  the
specific work-product which was submitted to Lexington in its
settlement attempts. Generally, disclosure of work product will
result  only  in  the  waiver  of  work  product  protection  for  the
particular materials disclosed and not for all related materials
involving  the  same  subject  matter.  See  Bramlette  v.  Hyundai
Motor Co., No. 91 C 3635, 1993 Wl 338980 (N.D. III. Sept. 1,
1993) (disclosure of 5 reports from internal investigation did
not waive work product protection of 7 related reports that were
kept  confidential);  see  also  In  Re  Air  Crash  Disaster,  133
F.R.D. 515, 527 (N.D. III. 1990) (drafts behind report that was
disclosed are still protected under work product doctrine).

14

Mere disclosure of an investigative report does not waive the protection of related work product such as notes, memos, research, strategies, or personal recollections. See In re Commercial Financial Services, Inc., 247 B.R. 828, 852 (Bankr. N.D. Okla 2000); see also Minn. Speciality Crops, Inc. v. Minn. Wild Hockey Club. L.P., 210 F.R.D. 673, 677 (D. Minn. 2002); Hager v. Bluefield Reg'l Med. Ctr., 170 F.R.D. 70 (D.D.C. 1997).

Thus, even if Plaintiff has waived the work-product protections of the Weidlinger and TEI reports, Lexington already is in possession of the documents to which it is entitled and the Court should proceed to enter Plaintiff's protective order.

### CONCLUSION

Based on the foregoing, and for the reasons set forth in its moving papers, this Court should grant Plaintiff's Motion.

Dated May 26, 2015      By: s/Lauren W. Gershuny
Lauren W. Gershuny, Esq.
Jennifer Mazawey, Esq.
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102

Conlee S. Whiteley, Esq.
Deborah R. Trotter, Esq.
(admitted *pro hac vice*)
**KANNER & WHITELEY, L.L.C.**
701 Camp Street
New Orleans, Louisiana 70130

*Attorneys for Plaintiff,*
*Beachfront North Condominium*
*Association, Inc.*

21294/001/ 13123206v1

15