[Doc. No. 42]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BEACHFRONT NORTH CONDOMINIUM ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> LEXINGTON INSURANCE COMPANY, <br><br> Defendant. | Civil No. 14-6706 (RBK/JS) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on plaintiff's ("BNCA") Motion for Protective Order [Doc. No. 42]. The Court received the opposition of Lexington Insurance Company ("Lexington") [Doc. No. 43] and BNCA's reply [Doc. No. 48], and held oral argument on July 28, 2015. This is an action for insurance benefits arising from Superstorm Sandy. The essence of BNCA's motion is that it wants to bar discovery regarding the communications between and amongst itself and its counsel and consultants based on the attorney-client privilege and work-product doctrine. For the reasons to be discussed, BNCA's motion is GRANTED in part and DENIED in part. The Court's Order identifies the discoverable documents and ESI BNCA must produce and when.

Background

BNCA alleges Lexington underpaid its insurance claim for Superstorm Sandy related wind damage which occurred on October 29, 2012 to its properties located at 11, 22 and 33 Cooper Avenue, Long Branch, New Jersey. On November 1, 2012, BNCA gave Lexington notice of its claim. Thereafter, Lexington assigned York Risk Services Group ("York") the responsibility to adjust the claim. After not hearing back from Lexington, BNCA hired the law firms of Genova Burns and Kanner & Whiteley, LLC, on January 29, 2013. BNCA's counsel placed Lexington on notice of its representation on April 1, 2013. Thereafter, BNCA's law firms hired Weidlinger Associates, Inc. ("Weidlinger") and Tremaine Enterprises, Inc. ("Tremaine") to assist them in preparing BNCA's claim to be submitted to Lexington. These consultants prepared reports addressing the causation and scope of the Sandy-related wind damage. See Mazawey Cert. ¶ 4 [Doc. No. 42-2]. On August 19, 2013, BNCA produced to Lexington what it refers to as the "draft" reports of Weidlinger and Tremaine. BNCA claims, inter alia, that it is entitled to $2.6 million under its policy. On September 11, 2014, Lexington denied BNCA's claim. BNCA filed its complaint on October 27, 2014.

In general, the parties' discovery dispute concerns Lexington's request that BNCA produce the documents exchanged between and amongst BNCA, BNCA's counsel, and Weidlinger and

Tremaine regarding BNCA's insurance claim and the consultants' property inspections and reports. BNCA objects and argues the requested documents are protected by the attorney-client privilege and/or the work-product doctrine. The Court is at a disadvantage in deciding the present discovery dispute because the parties have not identified the specific documents at issue. Therefore, the Court can only give BNCA general guidelines to use for its document productions.[1]

Discussion

    1. Attorney-Client Privilege

The Court's analysis is guided by the following legal principles. The burden of establishing that a communication or document is privileged is on the party asserting the privilege. Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996). The attorney-client privilege protects communications when: (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal

---

[1] The parties' document production also obviously includes responsive ESI.

proceeding, and (d) not for the purpose of committing a crime or tort, and (4) the privilege has been (a) claimed and (b) not waived by the client. Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994). Importantly, the attorney-client privilege does not apply just because a statement was made by or to an attorney. Instead, "[t]he privilege 'protects *only* those disclosures - necessary to obtain informed legal advice – which might not have been made absent the privilege.'" Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423-24 (3d Cir. 1991) (citation omitted).  An attorney who is not performing legal services or advice and who performs non-legal duties does not qualify for the privilege. Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 550-51 (1997).  This is true even if litigation may arise from the subject of the attorney's activities. Id. at 551.

When this case law is applied to the present case the following two principles must guide BNCA's document production. One, not all communications between BNCA and its counsel are privileged. See, e.g., Craig v. Rite Aid Corp., C.A. No. 08-2317, 2012 WL 426275, at *6 (M.D. Pa. Feb. 9, 2012) (the mere involvement of an attorney in a communication is not in and of itself enough for the attorney-client privilege to be applicable). The only communications that are privileged are those that are made for the purpose of securing legal advice. In

4

re Bristol-Myers Squibb Sec. Litig., C.A. No. 00-1990 (SRC), 2003 WL 25962198, at *3 (D.N.J. June 25, 2003) (citing In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997)). Two, facts are discoverable and are not protected by the attorney-client privilege. Upjohn Co. v. United States, 449 U.S. 383, 395 (1981). Thus, even if portions of a document are privileged, relevant and discoverable facts contained therein must be produced.

A question has arisen as to whether counsel's communications with Weidlinger and Tremaine may be protected by the attorney-client privilege.[2] The answer is yes, but not necessarily so. It is well settled that the attorney-client privilege may apply to communications between an attorney and his/her agent even though the client is not a direct participant. In re Grand Jury, 705 F.3d 133, 160 (3rd Cir. 2012) (citation omitted) ("'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation."). As noted in Westinghouse Elec. Co., 951 F.2d at 1424, "the client may allow disclosure to an 'agent' assisting the attorney in giving legal advice to the client without waiving the privilege." Thus, communications between and amongst BNCA's

---

[2] As discussed infra, the work-produce doctrine does not apply to any document prepared before September 1, 2014.

counsel and their agents Weidlinger and Tremaine for the purpose of securing legal advice are privileged. As a corollary, however, communications primarily for a non-legal purpose, e.g., to prepare the claim to be submitted to Lexington, are not privileged.[3] Emmanouil v. Roggio, C.A. No. 06-1068 (GEB), 2009 WL 961275, at *2 (April 7, 2009) (the privilege does not extend to any advice which is not legal in nature, i.e., business advice). The key issue regarding the applicability of the attorney-client privilege is the purpose of the work of BNCA's attorneys.  If the purpose was to provide legal advice or to prepare for litigation, the privilege applies.  If the purpose was to prepare an insurance claim to present to Lexington, the privilege does not apply.  See generally Peyton, 148 N.J. at 550-51.

   2.   Waiver of Attorney-Client Privilege

   Lexington argues that BNCA waived any attorney-client privilege that may apply to the Weidlinger and Tremaine reports produced to Lexington on August 19, 2013. Def.'s Opp. Br. at 28 [Doc. No. 43] ("[A] full subject matter waiver exists as to all

---

[3] BNCA argues its consultants were hired to render legal advice or to assist in rendering legal advice. Pl.'s Br. at 9-10 [Doc. No. 42-1]. At this time the Court does not have sufficient information to make a final decision as to whether to accept or reject this conclusory statement.  After BNCA responds to Lexington's discovery requests in accordance with this Order, the Court may have to decide the issue if Lexington is not satisfied with BNCA's response.

of the documents and communications that relate to the topics in the Tremaine and Weidlinger Reports, including [t]he Tremaine and Weidlinger Material."). The Court agrees and disagrees. Weidlinger and Tremaine will testify at trial for plaintiff.[4] Further, BNCA produced the Weidlinger and Tremaine reports to support its insurance claim. Accordingly, BNCA must produce the information its consultants considered to prepare their reports, even if the material is privileged. See Fed. R. Civ. P. 26(a)(2)(B)(ii). BNCA cannot use the information its consultants considered as a sword and a shield. See Payton, 148 N.J. at 553 ("A party may not abuse a privilege, including the attorney-client privilege, by asserting a claim or defense based on the privilege."). As noted in Payton, "[t]o allow such conduct would be truly inequitable." Id.

To be clear, however, not all privileged communications between counsel and their consultants must be produced. If the consultants did not consider privileged information to prepare their reports, the information does not have to be produced. If the consultants considered privileged information to prepare their reports, the information must be produced.[5] The Court

---

[4] BNCA designated these consultants as trial experts. Pl.'s Br. at 1, 7.
[5] BNCA may argue it does not have to produce the information its experts considered until later in the case when final expert reports are done. The Court disagrees. The Court has the authority to manage and schedule discovery to assure the most efficient management of the case. See In re Fine Paper Antitrust

7

declines to rule that BNCA waived its attorney-client privilege as to all communications with Weidlinger and Tremaine. The privilege is only waived as to those communications Weidlinger and Tremaine considered when they prepared the reports submitted to Lexington on August 19, 2013. See In re Teleglobe Communications Corp., 493 F.3d 345, 361, 361 n.14 (3rd Cir. 2007) ("[C]ourts do not imply a broader [privilege] waiver than necessary to ensure that all parties are treated fairly."). Also stating, "the scope of the [privilege] waiver is only as broad as necessary to remedy any unfair advantage." Id.); D'Onofrio v. Borough of Seaside Park, C.A. No. 09-6220 (AET), 2012 WL 1949854, at *17 (D.N.J. May 30, 2012) ("[T]he interests of justice favor imposing a waiver that is narrow in scope").[6]

In order to avoid disputes in the future about what it means for information to be "considered" by an expert, the Court will address the issue now.  The Court adopts the majority "pro-discovery" position that "a party must disclose all information provided to its testifying expert for consideration in the

---

Litigation, 685 F.2d 810, 817 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court.").

[6]  To the extent BNCA argues the requested discovery is barred because the August 19, 2013 reports were produced for settlement purposes, the argument is inapposite. The Court is only deciding the parties' discovery dispute.  The Court is not deciding whether the requested discovery is admissible at trial. Further, the record shows that BNCA sent the consultants' reports to Lexington to get paid for its insurance claim and not to settle litigation or in anticipation of litigation.

8

expert's report, including information otherwise protected by the attorney-client privilege or the work product [doctrine]." Synthes Spine Co., L.P. v. Walden, 232 F.R.D. 460, 462 (E.D.Pa. 2005); F.T.C. v. Lane-Labs, USA, Inc., C.A. No. 00-CV-3174(DMC), 2008 WL 4003927, at *1 (D.N.J. Aug. 25, 2008)("Although the case law is not uniform, the overwhelming majority of courts have required the production of any information considered by a testifying expert in reaching his or her opinion, regardless of any privilege that may otherwise exist.").  The definition of "considered" set forth in Synthes Spine is also adopted.  This definition provides that an expert must disclose all information he/she "generates, reviews, reflects upon, reads and/or uses in connection with the formulation of his [or her] opinions, even if the testifying expert ultimately rejects the information.". 232 F.R.D. at 464; accord  Billups v. Penn State Milton S. Hershey Medical Center, C.A. No. 11-CV-1784, 2014 WL 1334218, at *8 (M.D. Pa. April 2, 2014).

    3. Trigger Date for the Work-Product Doctrine

    As to BNCA's work product claim, BNCA contends it anticipated litigation as of January 29, 2013. This argument is primarily based on the fact that this is the date counsel was retained. BNCA also relies upon the following averment in the Certification of its counsel, Conlee S. Whiteley, Esquire, which states at paragraph 5:

> From our experience, we have also learned that, when a client has incurred property damage in a natural disaster and an insurance company has failed to perform a proper investigation of the property, resolution of the claim often requires litigation.

See Cert. of Conlee S. Whiteley ¶ 5 [Doc. No. 42-10]. BNCA also cites to the fact that it put Lexington on notice of its loss on November 1, 2012. Also, that on March 12, 2013, York acknowledged that BNCA's demand for insurance was turned over to BNCA's counsel. See Pl.'s July 24, 2015 Letter Brief, Exhibit C at 2-3 [Doc. No. 56-4]. In addition, BNCA argues that on April 8, 2013, York advised BNCA that the parties could voluntarily mediate BNCA's claim. See Pl.'s Reply Br., Ex. B [Doc. No. 48-3]. BNCA further argues that on August 20, 2013, York asked Lexington if it wanted to consider "the appointment of legal counsel to assist in determining the future adjustment investigation measures." See Pl.'s Reply Br., Ex. C [Doc. No. 48-4].

In order for documents to be protected from discovery pursuant to the work-product doctrine, "it must be reasonably clear based on the surrounding facts and the nature of the materials that they were in fact prepared or obtained because of pending or anticipated litigation." Reich v. Hercules, Inc., 857 F. Supp. 367, 372-73 (D.N.J. 1994) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)). Documents prepared in the regular course of business are not protected.

United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990). Documents created for other purposes that are useful in subsequent litigation are not attorney work-product. In re: Gabapentin Patent Litigation, 214 F.R.D. 178, 184 (D.N.J. 2003). Thus, a party seeking to invoke the work-product doctrine must prove at least two elements. First, that a document was prepared because of reasonably anticipated litigation. Second, that the material was prepared because of the prospect of litigation and for no other purpose. Id. at 183-84.

The burden of proving that a document is protected rests with the party asserting the work-product doctrine. Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996); Cooper Health System v. Virtua Health, Inc., 259 F.R.D. 208, 213 (D.N.J. 2009). The party claiming protection must demonstrate the precise manner in which a document is protected. Cooper Health System, supra. Blanket assertions do not suffice. Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000); United States v. Trenk, C.A. No. 06-1004 (MLC), 2006 WL 3359725 (D.N.J. Nov. 20, 2006).

Whether a document is prepared in anticipation of litigation is a difficult determination. Gabapentin, 214 F.R.D. at 183; Payton, 148 N.J. at 550 ("[A] fine line exists between an attorney who provides legal services or advice to an organization and one who performs essentially nonlegal

11

duties."). In general, however, a party must show more than a "remote prospect" or an "inchoate possibility" for a likely chance of litigation. Id. "[A] party must show that there existed 'an identifiable specific claim of impending litigation when the materials were prepared.'" Id. (citing Harper v. Auto-Owners Insurance Co., 138 F.R.D. 655, 660 (S.D. Ind. 1991)). The mere involvement of an attorney does not, in itself, evidence that a document was prepared in anticipation of litigation. Id. Documents created for other purposes that prove useful in subsequent litigation are not attorney work-product. Gabapentin, 214 F.R.D. at 184. Further, a document may be protected by the work-product doctrine even though it was not prepared by an attorney. The work-product doctrine may apply even if a document was prepared by a party's agent. See United Coal Companies, 839 F.2d 958, 966-67 (3d Cir. 1988) (citations omitted).

Given the present record the Court finds that BNCA has not satisfied its burden of proving that it anticipated litigation as of January 29, 2013, the date BNCA retained counsel. The Court does not accept the notion that simply because BNCA hired an attorney it anticipated litigation. See Fredericks v. Atlantic City Bd. of Educ., C.A. No. 08-3082 (RBK/JS), 2010 WL 3429605 (D.N.J. Aug. 26, 2010) (attorney hired to perform investigation rather than in anticipation of litigation). Nor

is the Court persuaded by Ms. Whiteley's Certification that resolution of a claim "often" requires litigation. Here, despite the general conclusory statements in BNCA's Certifications, the record shows that plaintiff's counsel was hired to prepare and present plaintiff's insurance claim to Lexington. Of course, there was a possibility that litigation could result after BNCA hired its counsel. However, the hiring of counsel is not in and of itself enough to anticipate litigation within the meaning of the work-product doctrine. See Amer. Home Assur. Co. v. United States, C.A. No. 09-258 (DMC), 2009 WL 3245445, at *2 (D.N.J. Oct. 7, 2009) ("[T]o assume that litigation may ensue from any accident may not be unreasonable, but the concept that the mere occurrence of an accident constitutes anticipation of litigation has been soundly rejected[.]").

Given that BNCA did not satisfy its burden to show plaintiff anticipated litigation as of January 29, 2013, the Court must decide the applicable trigger date for the work-product doctrine. The Court concludes that the date BNCA anticipated litigation was September 11, 2014, the date Lexington denied BNCA's claim. Before that date the actions of BNCA and its counsel were geared toward the presentment and evaluation of BNCA's insurance claim. The Court concludes that for the purpose of applying the work-product doctrine BNCA did

not anticipate litigation until its insurance claim was denied on September 11, 2014. As noted, a "remote prospect" or "inchoate possibility" of litigation does not trigger the work-product doctrine. Gabapentin, 214 F.R.D. at 183.[7]

Conclusion

For the reasons discussed herein, the Court rules that plaintiff's Motion for Protective Order [Doc. No. 42] is granted in part and denied in part in accordance with this Order.

ORDER

Accordingly, for the reasons discussed herein,

IT IS HEREBY ORDERED this 5th day of August, 2015, that plaintiff's Motion for Protective Order is GRANTED in part and DENIED in part; and it is further

ORDERED as follows:

---

[7] There is a second reason the Court rejects BNCA's assertion that the work-product doctrine was triggered as of January 29, 2013. The work-product doctrine only applies to protect documents prepared because of the prospect of litigation and for no other purpose. Gabapentin, 214 F.R.D. at 183-84. The appropriate inquiry is whether "in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979) (citation omitted). "Documents created for other purposes that prove useful in subsequent litigation are not attorney work product." Gabapentin, 214 F.R.D. at 184. The record reflects that BNCA's documents prepared before September 11, 2014, including the reports submitted on August 19, 2013, were prepared for presenting BNCA's insurance claim to Lexington and not, as BNCA argues, in anticipation of litigation.

1. For the purpose of applying the work-product doctrine, the date BNCA anticipated litigation is September 11, 2014, the date Lexington denied BNCA's claim. The work-product doctrine is not applicable to documents prepared before this date.

2. By producing the Weidlinger and Tremaine reports on August 19, 2013, and by designating these consultants as trial experts, BNCA waived any attorney-client privilege as to the information the consultants "considered" to prepare their reports. Accordingly, BNCA shall produce all documents Weidlinger and Tremaine considered to prepare their reports produced on August 19, 2013.

3. BNCA shall produce all relevant and requested non-privileged communications between BNCA and Weidlinger and Tremiane. Relevant facts contained in the documents and ESI are discoverable. To the extent BNCA claims any such documents or portions thereof are privileged, a privilege log shall be produced. To the extent Lexington challenges BNCA's designations, the Court shall be notified after the parties meet and confer in person or by phone to attempt to resolve their dispute.

4. Communications prior to October 27, 2014 between BNCA and its counsel for the purpose of securing legal advice are privileged. BNCA shall identify these documents on a privilege log. To the extent Lexington challenges BNCA's designations,

15

the Court shall be notified after the parties meet and confer in person or by phone to attempt to resolve their dispute. To the extent relevant and requested non-privileged communications between BNCA and its counsel exist, the documents shall be produced; and it is further

ORDERED that BNCA and Lexington shall complete their document and ESI productions by no later than August 31, 2015. All privilege logs shall also be produced by this date.[8]

                                       s/Joel Schneider
                                       JOEL SCHNEIDER
                                       United States Magistrate Judge

---

[8] The scope of this Order applies to Lexington's document requests, subpoenas and deposition notices.